JOSEPH G. DePASQUALE & another *vs.* BRADLEE & McINTOSH CO.

Suffolk.    January 11, 12, 1927. — March 2, 1927.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Deceit.  Practice, Civil,* Exceptions, Verdict with leave reserved under G. L. c. 231, § 120.  *Evidence,* Extrinsic affecting writings.  *Contract,* In writing.

An action of tort for deceit cannot be maintained by the buyer of sugar against the seller where it appears that the sale was in accordance with a contract in writing signed by the plaintiff, that the sugar was received, paid for and placed in a warehouse by the plaintiff, and that the plaintiff relied as the basis of the action upon representations, alleged to have been made by the defendant as an inducement to the contract and to have been false, that the sugar would satisfy a requirement as to quality which was not set out in the contract; and there is no contention by the plaintiff that the contract was executed by him by reason of any fraud or misstatement as to the nature of the contract, or of any fraud or misstatement as to the meaning of the executed instrument.

A breach of implied warranty of fitness in a sale does not give rise to an action of tort for deceit.

At the trial of an action of contract or tort relating to a sale of sugar, the trial judge, subject to an exception by the defendant, erroneously admitted evidence which tended to vary the terms of a contract of sale in writing which the plaintiff did not contend was executed by him by reason of any fraud or misstatement as to the nature of the contract, or of any fraud or misstatement as to the meaning of the executed in-

strument. At the close of the evidence, the plaintiff elected to go to the jury only on counts in tort for deceit in representing the sugar to be of a quality which was not set out in the contract. A verdict was received and recorded with leave reserved under G. L. c. 231, § 120, and later, in accordance with such leave, a verdict was entered for the defendant by order of the judge, and the plaintiff alleged exceptions. *Held,* that, although the case was before this court on exceptions by the plaintiff only, it was open to the defendant to contend that the evidence, although admitted, was of no effect to vary the contract, and that the plaintiff could not maintain the action of tort for deceit by alleging that warranties omitted from the valid contract in writing were fraudulent misrepresentations.

CONTRACT OR TORT, with a declaration described in the opinion. Writ dated October 6, 1920.

In the Superior Court, the action was tried before *Cox,* J. Material evidence is described in the opinion. As stated in the opinion, the plaintiffs elected at the close of the evidence to proceed only on the counts in tort. The jury found for the plaintiffs in the sum of $9,600.50. The trial judge, upon the receipt but before the recording of the verdict, reserved leave under G. L. c. 231, § 120, to enter a verdict for the defendant, and thereafter, upon motion by the defendant and by order of the judge, a verdict was entered for the defendant. The plaintiffs alleged exceptions.

*W. A. Murray,* for the plaintiffs.

*J. P. Carr,* for the defendant.

PIERCE, J. This action arises out of the sale by the defendant of two lots of sugar to the plaintiffs, under two written contracts, dated respectively May 4 and May 6, 1920. The lot sold under the "Memorandum of Sale" dated May 4, 1920, was called, in the "Memorandum," "American Washed Sugar"; the amount was five hundred bags, each bag of about one hundred pounds net. The lot sold under the "memorandum of sale" dated May 6, 1920, was called in the "memorandum" "Foreign Refined Granulated Sugar"; the amount of such sugar was two hundred fifty bags, each bag weighing net approximately two hundred twenty-four pounds.

The Central American, or washed sugar, arrived in New York on the steamship "Cristobal" on July 26, 1920. The defendant notified the plaintiffs when the sugar arrived and

the plaintiffs ordered it sent to Worcester. Irrevocable letters of credit issued out of the Worcester Bank and Trust Company, under which payments were made to the defendant for these two lots of sugar against shipping documents. The "Foreign Refined" sugar arrived in New York on board the steamship "Sophie Frankel" on July 8, 1920, and by the direction of the defendant was consigned to the order of the State Street Trust Company, and by the plaintiffs ordered to be shipped to a warehouse at Worcester. The "Washed Sugar" arrived in Worcester on August 10, 1920, the "Foreign Refined" on August 11, 1920. The bank paid the freight, ordered the sugar warehoused and notified the plaintiffs to that effect.

By each contract the sugar was sold "duty paid, ex ship New York." No inspection of either lot after its arrival at the Worcester Cold Storage and Warehouse Company on August 10 and 11, 1920, respectively, was made by the plaintiffs until September 28, 1920. On that date one of the plaintiffs inspected the sugar, and on September 30 and on October 1 wrote the defendant to the effect that the Central American Washed Sugar was not like the sample given at the time of the making of the contract; that the Foreign Refined granulated sugar was not as represented; that the sugar was valueless; that the plaintiffs held it to the order of the defendant; and that they rescinded both shipments and "hereby tender to you all of the sugar which you sent us and which is now deposited in the Worcester Cold Storage and Warehouse Co." To these letters the defendant replied, under date of October 4, 1920, as follows: "Referring to your letter of September 30th, please be advised that the Central American Washed and the Foreign Refined sugars were delivered in accordance with contract."

At the close of the evidence the trial judge ordered the plaintiffs to elect between counts one, three, four, and six, based on alleged breaches of the contracts, and counts two and five, based on alleged false and fraudulent representations. The plaintiffs waived the counts in contract, and elected to stand on counts two and five. The jury returned a verdict for the plaintiffs in the sum of $9,600.50. After

the verdict was received, but before it was approved and recorded, the judge reserved leave, with the assent of the jury, to enter a verdict for the defendant, as provided in G. L. c. 231, § 120; and thereafter, on motion of the defendant, the judge made an order in accordance with the leave reserved and a verdict was entered for the defendant, to which the plaintiffs excepted. The case is before this court on that exception.

The plaintiffs offered, and the judge received in evidence without exception of the defendant, the contracts dated May 4, 1920, and May 6, 1920, respectively. It was admitted by the defendant that under letters of credit on the Worcester Bank and Trust Company payment for the full amount set out in the contracts for the two lots had been made to the defendant. The contracts, admitted in evidence, read as follows: "May 4, 1920.  SOLD TO: A. De PASQUALE'S SONS — MILFORD, MASS.  500 (five hundred) bags (bags of about 100 pounds net) of CENTRAL AMERICAN WASHED SUGAR @ 23c (twenty-three cents) per pound, duty paid, ex ship New York.  Landed weights and tares.  SHIPMENT: During April and May from Central America.  PAYMENT: Buyer to open immediately irrevocable bank credit through Boston, for approximate value, in favor of Bradlee & McIntosh Co., payable against shipping documents.  Weight differences to be settled after final returns are received. Force Majeure conditions to apply to this contract.  No arrival no sale."  "May 6, 1920.  SOLD TO: A. DE PASQUALE'S SONS — MILFORD, MASS.  250 (two hundred fifty) bags (approximate weight 224# net each) Foreign Refined Granulated Sugar, packed in double bags, @ 24c (twenty-four cents) per pound, duty paid, ex ship New York.  SHIPMENT: From source during April and May, expected to arrive in New York June and July.  PAYMENT: Buyer to open immediately irrevocable bank credit for approximate value in favor of Bradlee & McIntosh Co., payable against shipping documents.  Force Majeure conditions to apply to this contract.  No arrival no sale."

Count two, in tort, in substance alleges that the defendant "for the purpose of inducing the plaintiffs to buy . . . [the

Central American Washed Sugar] fraudulently and falsely represented to the plaintiffs that the said sugar was the same in kind and quality as a certain sample thereof; that the plaintiffs, relying upon said representation, agreed to buy said lot of sugar at said price; that upon notice from the carrier with whom the defendant shipped said sugar, that the sugar had arrived, the plaintiffs, relying upon said false and fraudulent representation, that the same corresponded with said sample, paid to the defendant therefor the sum of $11,500; that the defendant mailed to the plaintiffs a memoranda [*sic*] of sale, a copy of which is hereto annexed marked 'A,' that the plaintiffs, relying upon said false representation, signed the same and remailed it to the defendant." Count five, in tort, alleges that the defendant "for the purpose of inducing the plaintiffs to buy . . . [Foreign Refined Granulated Sugar] fraudulently and falsely represented to the plaintiffs that the said sugar was the same in kind and quality as American Refined Sugar, and otherwise made representations relative thereto; that the plaintiffs, relying upon said false and fraudulent representations, agreed to buy said lot of sugar at said price; that upon notice from the carrier with whom the defendant shipped said sugar, that the sugar had arrived, the plaintiffs, relying upon said false and fraudulent representations, paid to the defendant therefor the sum of $13,450; that the defendant mailed to the plaintiff a memoranda [*sic*] of sale, a copy of which is hereto annexed marked 'B,' that the plaintiffs relying upon said false representations, signed the same and remailed it to the defendant." Each count sufficiently asserts reliance upon the alleged representations, and traverses the truth of such alleged misstatements.

At the trial there was no claim and no offer made to prove that the contracts introduced in evidence by the plaintiffs were executed by them by reason of any fraud or misstatement as to the nature of the instruments which they signed or of any fraud or misstatement as to the meaning of the contents of the executed memorandums. In fact one of the plaintiffs testified, in substance, that after a talk with the defendant he received the "two memos of sale" from the

defendant through the mail, signed them and mailed them back, "because . . . [he] relied on those statements he [the defendant's treasurer] made prior to the time he mailed them." It follows that the memorandums as contracts are not open to successful attack. *Sullivan* v. *Roche*, 257 Mass. 166, 171. *O'Meara* v. *Smyth*, 243 Mass. 188. In passing it is to be noted that the memorandum of sale dated May 4, 1920, makes no provision that the sugar shall correspond with a sample, and that the memorandum of sale dated May 6, 1920, makes no provision that the sugar therein described should be "the same in kind and quality as American Refined Sugar."

The contracts were fulfilled if the sugar when delivered at the storehouse at Worcester was merchantable sugar of the description set out in the terms of the memorandums of sale. The plaintiffs, nevertheless, had a cause of action in contract if the sugar delivered was not of a quality reasonably fit for the use to which the defendant was told the plaintiffs intended to put it. G. L. c. 106, §§ 16, 17. But a breach of an implied warranty of fitness does not give rise to an action of tort for deceit.

At the trial, against the exception of the defendant, the judge permitted one of the plaintiffs to state the talk he had with one Bradlee, treasurer of the defendant company, before the memorandums of sale were signed by the parties to them, and the action in tort (counts two and five) rests entirely upon statements of Bradlee which are alleged to have been "false and fraudulent representations" upon which the plaintiffs relied and which induced them to execute the contracts of sale. The position of the defendant is in no worse state under a direction of a verdict with leave reserved than it would be in the circumstances had it made no objection to the admission of the parol evidence and had made a written motion for a directed verdict for the defendant at the close of the evidence, which was allowed. It is settled by many decisions that the terms of a written instrument cannot be varied by parol evidence though put in by both parties. "Had the contract embodied all that the plaintiff alleges was promised in the premises, his remedy for damages

for failure to perform would have been upon the contract. He cannot maintain an action for the same damages, where some of the promises were not so embodied, by alleging the omitted promises to be fraudulent representations, and seeking recovery in tort." *Loughery* v. *Central Trust Co.* 258 Mass. 172. The evidence should not have been received, and the case stands before this court with such evidence disregarded and as if stricken from the record.

There was no evidence to warrant a finding for the plaintiffs on counts two and five. It results that judgment for the defendant should be entered on the verdict; and it is

*So ordered.*