CARTER REALTY CO., *et al.*, v. JOHN M. CARLISLE.

151 So. 498.
Division B.
Opinion Filed December 5, 1933.
Rehearing Denied January 2, 1934.

*Robert C. Lane,* for Appellants;

. *J. M. McCaskill* and *Frank Smathers,* for Appellee.

BUFORD, J.—The appeal is before us from a final decree in the case where appellee was complainant in the court below and filed bill of complaint to cancel eight certain promissory notes dated January 5, 1926, and aggregating $12,200.00, together with a mortgage given to secure the notes, and to enjoin proceedings at law in a suit brought by the defendant named in the bill of complaint to enforce the payment of the notes against the complainant in the court below.

Relief was prayed on the ground, in effect, that the notes were executed and given by the complainant to the defendant as a part of the purchase price of a certain lot and one-half lot of land in a certain transaction wherein the complainant and his brother-in-law bought three lots of land from the defendant Carter Realty Corporation, acting through E. J. Carter and his brother, W. T. Carter, who owned and managed the corporation. That while the transaction was a joint transaction between Carlisle, the complainant, and his brother-in-law, Rollins, on the one part and Carter Realty Company, a corporation, and the two Carters on the other part, that by agreement between the parties Carlisle took deed to one lot and one-half lot and Rollins took deed to one lot and one-half lot and each paid a like part of the purchase price of the three lots and each gave notes and mortgage for the balance of the purchase price of the parcels of land deeded to each, respectively, thereby each becoming liable only for the purchase price of the parcel deeded to the maker of the notes and mortgages. That the lots were purchased with the understand-

ing and for the purpose, as agreed between all the parties, that Carlisle would erect a permanent home on the lot and one-half lot deeded to him and that Rollins would likewise erect a permanent home on the lot and one-half lot deeded to him. That after a part of the purchase price had been paid an agreement was reached between Carlisle and the Carters, acting for themselves and the corporation, that Carlisle and Rollins would reconvey the property to the corporation and the corporation would keep the money paid on the purchase price and return to each the notes and mortgages executed respectively by them. That in pursuance of this agreement Rollins reconveyed the lots deeded to him and received back the notes and mortgage executed by him and his wife. That the reconveyance by Rollins was solely because of the agreement entered into between Carlisle and the Carters that the lots would be so reconveyed and the notes and mortgages delivered up and cancelled. That the Carters were unable at the time to carry out their agreement in full with Carlisle because the notes were then hypothecated in a bank as security of a loan procured by the Carters but the Carters represented to Rollins and to Carlisle that they would procure the release of the notes and mortgage and would deliver same up to Carlisle and accept from Carlisle a reconveyance of the lots mentioned. That Carlisle, relying upon and depending upon this agreement, bought another home at a large expense to himself and thereby placed himself in position where he had no need for the lot originally purchased from the Carters. That the lots purchased were selected and purchased solely because by doing so Carlisle and Rollins could erect homes adjoining one another where each family could enjoy the companionship and society of the other as a close neighbor.

We do not intend to say that this is the undisputed evidence, but these are the conclusions which the chancellor may have, and evidently did gather from the entire evidence and upon which he acted and upon which he granted a decree, evidently upon the theory that a parol agreement had been entered into to cancel the notes and mortgage which became binding when it was acted upon by Carlisle and Rollins in such manner as to change their positions, which change they would otherwise not have made and the fruits of which agreement had been received by the Carters in the reconveyance of the lands deeded to Rollins, together with the retention of all the moneys which Rollins had paid as a part of the purchase price of such lands.

This statement of the case substantially determines the result which must follow here.

In Moses, *et al.,* v. Woodward, *et al.,* opinion filed April 18th, 1933, reported 147 Sou. 690, we said:

"As against the contention of appellants, appellees' contended that the agreement brought in question cannot have attributed to it the importance claimed because it was in parol and to do so would modify the mortgage, a written instrument. The rule is well settled that an executory or parol agreement will not be permitted to abrogate or modify a written or sealed instrument, but this rule is not without its exceptions. A written contract or agreement may be altered or modified by an oral agreement if the latter has been accepted and acted upon by the parties in such manner as would work a fraud on either party to refuse to enforce it. 6 R. C. L. 917; Bishop v. Busse, 69 Ill. 403; Pratt v. Morrow, 45 Mo. 404, 100 Am. Dec. 381; American Food Co. v. Halstead, 165 Ind. 633, 76 N. E. 251; Munroe v. Perkins, 9 Pick. (Mass.) 298, 20 Am. Dec. 475; Beach v.

Covillard, 4 Cal. 316; Siebert v. Leonard, 17 Minn. 433 (Gil. 410); Bassini v. Brockner, 10 N. J. L. J. 105."

As we find substantial evidence to support the decree and as, from a careful examination of the record, we cannot say that it is made clearly to appear that the chancellor committed error, the decree is' affirmed on authority of the opinion and judgment in the case of Moses, *et al.,* v. Woodward, *supra,* and authorities there cited.

It is so ordered.

Affirmed.

DAVIS, C. J., and WHITFIELD, ELLIS and BROWN, J. J., concur.

TERRELL, J., not participating.