BAUER, Respondent, *v.* MONROE, et al., Appellants.

No. 8509

Submitted March 21, 1945. Decided May 4, 1945.

158 Pac. (2d) 485

Mr. James T. Harrison, of Malta, for Appellants.

Mr. Clarence H. Roberts, of Glasgow, for Respondent.

MR. JUSTICE ADAIR delivered the opinion of the court.

Albert Tetrault, an elderly bachelor, owned two ranches, 15 miles apart, located on Beaver Creek in Phillips county, Montana. The upper ranch comprised over 2,000 acres and the lower ranch, called "the hay ranch", comprised 640 acres.

Tetrault first employed the plaintiff Henry H. Bauer as a ranch hand and for a number of years plaintiff continued in such employment working for wages. In the year 1921 Tetrault and plaintiff entered into a lease agreement whereby plaintiff agreed to operate the hay ranch and to give to the landlord, Tetrault, as rental therefor one-half of all the hay produced thereon. Pursuant to such lease agreement plaintiff and his wife moved to the hay ranch where they have continuously resided since 1921.

On November 30, 1935, Tetrault and plaintiff entered into a formal written contract, duly signed, witnessed and acknowledged, whereby Tetrault agreed to sell and the plaintiff, Bauer, agreed to buy the hay ranch at the agreed consideration of $6,400, payable at the First State Bank of Malta, Malta, Montana, in twelve installments.

The contract provides that if the plaintiff, Bauer, "shall first make the payments and perform the covenants hereinafter mentioned on his part to be made and performed" then Tetrault

"covenants and agrees to convey and assure" to him "in fee simple clear of all encumbrances whatever, by a good and sufficient Deed" the lands comprising the Tetrault hay ranch.

By the terms of the contract Bauer agreed to pay $1,000 on the signing of the contract and thereafter the sum of $500 annually on or before the 1st day of each December of the years 1938 to 1947, inclusive; the sum of $400 on or before December 1, 1948, and also to annually pay interest at the rate of five per cent per annum on the whole sum of the purchase price remaining from time to time unpaid, and to pay all taxes, assessments or impositions that may be legally imposed upon said land subsequent to the year 1935.

The written contract so entered into was deposited by Tetrault for safe-keeping in the First State Bank of Malta where it has since remained at all times and where such payments as have been made thereon were received and credited.

On April 16, 1942, Albert Tetrault died intestate at the age of 80 years and the defendant R. G. Monroe, vice-president of the First State Bank of Malta, was appointed and qualified as administrator of his estate.

On July 15, 1942, plaintiff presented and filed with the administrator his verified claim against the said estate to which he attached a copy of said written contract for deed of November 30, 1935. In said claim plaintiff represented that he had paid on said written contract the down payment of $1,000, the sum of $500 paid on principle on November 30, 1938, and three interest payments of $270 each paid on October 20, 1936, January 5, 1938 and November 28, 1938, respectively. The claim recites that in "February, 1939, Albert Tetrault expressed his desire to terminate the contract for deed above-mentioned and enter upon a new agreement in the following words: 'Henry,' he said, 'you have done too much for what this place is worth. If you will keep up the tax and water payments, put in more alfalfa, build up those dikes, and give me a home here with you folks, I'll give you the deed to this place. You don't have to pay any more.' To which claimant replied: 'I'll do those

things, Tet, you can always make your home with us'." The claim further states, that in reliance upon said mutual promises and pursuant to said oral agreement "that Albert Tetrault stayed with and made his home with claimant and his wife continuously each year from fall until spring and during the summer months when not away looking after his other interests; that claimant re-sowed seventy acres of alfalfa during the spring of 1941, built new dikes totalling two and three-quarters miles in length, kept all taxes and water charges paid up and did all things required of him by the new agreement; * * * that he (claimant) would not have performed the said work and labor, nor furnished the home, nor made the improvements as directed, nor made the sacrifices required of himself and wife were it not for the said agreement as aforesaid, and he and his wife did so in reliance upon the promise and agreement of said Albert Tetrault, as aforesaid; * * * that claimant is entitled to all of said property and estate therein described and no part of the same has yet been turned over, conveyed or paid to claimant; that claimant has received nothing for said services.

"That because of the nature of the work required of claimant and which was rendered by claimant and his wife to the said Albert Tetrault, and because of the work done in improving the premises beyond that required by the said Albert Tetrault, and because of the sentimental value attached to a place where claimant and his wife have spent twenty-three years of their lives working and improving, claimant feels it is difficult, if not impossible to estimate the reasonable value of the premises to him by any pecuniary standard, but claimant alleges the reasonable value for all services, improvements, and sentimental value to be at least the sum of Six Thousand Dollars ($6,000.00)."

The claim concludes with the demand that the described premises now under the control of the administrator be turned over, conveyed and transferred to claimant, or if for any reason it is found that claimant is not entitled to the specific performance of said contract, that he be paid the sum of Six Thousand

310

Dollars ($6,000.00), the reasonable value of said services and premises as aforesaid.''

The administrator refused to turn over and convey the property to plaintiff whereupon plaintiff commenced this action against the administrator and certain of the heirs of deceased praying that the defendant administrator ''be required to execute deed to the real property above described to the plaintiff'' and that ''if, for any reason, it be determined that plaintiff is not entitled to the specific performance of said agreement that he be paid the sum of Six Thousand Dollars ($6,000.00), the reasonable value of said services and improvements or the reasonable value of the premises themselves to the plaintiff, and that the same be paid in the due process of the administration of said estate.''

The plaintiff attached to and made a part of his complaint a copy of the original written contract for deed and a copy of his claim against the estate of deceased.

In their amended answer defendants admit the making and signing of the written contract for deed dated November 30, 1935; admit that plaintiff had paid thereon $1,500 of the purchase price and the three interest installments alleged; but as to the allegations concerning the making of the alleged oral contract of February 1939, defendants allege that they do not have any knowledge or information thereof sufficient to form a belief and therefore deny the same and the whole thereof and deny that plaintiff is entitled to the land and allege ''that said contract for deed has not yet been fully paid and that there is now due and owing thereon by the plaintiff the sum of $4,900.00 with interest thereon at the rate of 5% per annum from and after the 1st day of December of 1938.''

It is well settled in this state that where the making of the oral contract alleged in the complaint is put in issue by the answer, the defendant may avail himself of the statute of frauds without pleading same. Christiansen v. Aldrich, 30 Mont. 446, 76 Pac. 1007; Mitchell v. Henderson, 37 Mont. 515, 97 Pac. 942.

However, in the instant case, defendant specially pleaded the statute.

As a second defense defendants allege that the action is barred by the provisions of Sec. 7519 of the Revised Codes of Montana, 1935. This statute, in part, provides: "The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or his agent: 1. An agreement that by its terms is not to be performed within a year from the making thereof. * * * 5. An agreement * * * for the sale of real property, or of an interest therein; * * * ."

As a third defense defendants allege that the action is barred by the provision of Sec. 10613 of the Revised Codes of Montana, 1935. This statute, in part, provides: "In the following cases the agreement is invalid, unless the same or some note or memorandum thereof be in writing, and subscribed by the party charged, or by his agent; evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents: 1. An agreement that by its terms is not to be performed within a year from the making thereof. * * * 5. An agreement * * * for the sale of real property, or of an interest therein; * * * ."

As a fourth defense defendants allege that the action is barred by the provisions of Sec. 7593 of the Revised Codes of Montana, 1935. This statute provides: "No agreement for the sale of real property, or of any interest therein, is valid, unless the same, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged, or his agent, thereunto authorized, in writing; but this does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof."

In his reply, by a negative pregnant, "the plaintiff denies that said contract for deed has not yet been fully paid and that there is now due and owing thereon by the plaintiff the sum of $4,900.00 with interest thereon at the rate of 5% per annum

312

from and after the 1st day of December, 1938; admits the other allegations of said paragraph VI.'' The reply also separately denies the second, third and fourth defenses pleaded in the answer.

The trial before the court, sitting without a jury, resulted in findings and judgment for plaintiff. The judgment orders the administrator of the estate of Albert Tetrault to make, acknowledge and deliver to plaintiff a deed conveying to him title to the premises and quiets title thereto in plaintiff. The defendants have appealed from the judgment assigning as error (1) the giving, making and entering of the judgment for plaintiff; (2) the making of the finding that the deceased Albert Tetrault entered into the alleged oral agreement with plaintiff; (3) the making of the finding that plaintiff was entitled to specific performance of the alleged oral agreement; and (4) in failing to find that plaintiff had failed to prove the material allegations of his complaint.

It stands admitted by the pleadings that the deceased and plaintiff did on November 30, 1935 enter into a written contract for the sale of Tetrault's hay ranch to plaintiff and that thereafter the plaintiff made two of the twelve payments on the purchase price called for by the contract. The written contract so made fully complied with all the requirements of the statute of frauds.

Plaintiff desires to be released from his definite and certain obligations under the written contract and to substitute therefor an alleged oral executory agreement, uncertain and indefinite as to time and terms, made in violation of the statute of frauds and covering the same subject and having the same object as the written contract.

Plaintiff does not plead that the written contract was in fact actually extinguished but he simply alleges in his complaint ''That during the month of February, 1939, Albert Tetrault expressed his desire to terminate the contract for deed above mentioned and enter upon a new agreement'' being the alleged oral agreement above set forth.

Sec. 7570, Revised Codes, provides that, "The destruction or cancellation of a written contract, or of the signatures of the parties liable thereon, with intent to extinguish the obligation thereof, extinguishes it as to all the parties consenting to the act." However, the evidence in this case clearly shows that the parties did not comply with such statute. The written contract was neither destroyed nor cancelled. On the contrary, the evidence is undisputed that the written contract was at all times kept in the bank where it was at the time of Albert Tetrault's death, which occurred more than three years after he is alleged to have "expressed his desire to terminate" the writing. Thus did the decedent at all times treat the contract as a valuable document.

As before stated, the object of the written contract for deed and of the alleged oral agreement was one and the same, namely to obtain from Albert Tetrault a deed conveying to plaintiff the title to the same tract of land. In each case plaintiff agreed to keep up the tax and water payments on the land. Under such facts it is clear that an attempt is here made to alter the written contract for deed by an alleged executory oral agreement whereby plaintiff still would receive a deed to the land without completing the stipulated payments required of him under the written contract.

Sec. 7569, Revised Codes of Montana of 1935, provides: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." The rule so set forth in the statute is not a rule of evidence but it is a rule of substantive law. Thayer's Preliminary Treatise on Evidence, p. 397; 9 Wigmore on Evidence, 3d Ed., Sec. 2400; Chamberlayne's Modern Law of Evidence, Sec. 3548; 32 C. J. S., Evidence, Sec. 851, p. 787; 20 Am. Jur. Sec. 1100, p. 963; Restatement of Law of Contracts, Sec. 237, comment a. The rule rests on the doctrine that when parties have deliberately put their agreements in the form of a written contract they shall not be allowed to show that the agreement was something else. Even though testimony in violation of Sec. 7569 be admitted

at the trial without objection, such testimony has no legal effect and it cannot be considered by the court, trial or appelate. Gore v. Bingaman, 29 Cal. App. (2d) 460, 85 Pac. (2d) 172, 181. See also Pitcairn v. Philip Hiss Co., 3 Cir., 125 F. 110; Bushnell v. Elkins, 34 Wyo. 495, 245 Pac. 304, 51 A. L. R. 13; Cockrell v. Martin, 124 Okla. 284, 255 Pac. 1101; Mears v. Smith, 199 Mass. 319, 85 N. E. 165; DePasquale v. Bradlee & McIntosh Co., 258 Mass. 483, 156 N. E. 37; Martin v. Jablonski, 253 Mass. 451, 149 N. E. 156; Fogler v. Purkiser, 127 Cal. App. 554, 16 Pac. (2d) 305.

In Pitcairn v. Philip Hiss Co., supra [125 F. 113], the court said:

"According to the modern and better view, the rule which prohibits the modification of a written contract by parol is a rule, not of evidence, but of substantive law. 21 A. & E. Enc. Law (2d Ed.) 1079; Thayer's Evidence, p. 390 et seq.; 1 Greenleaf, Evidence (16th Ed.) Sec. 350a. Parol proof is excluded, not because it is lacking in evidentiary value, but because the law for some substantive reason declares that what is sought to be proved by it (being outside the writing by which the parties have undertaken to be bound) shall not be shown. Where, by statute, a writing is required either to create an obligation or to effect a result, as in the case of deeds and wills, or of contracts within the statute of frauds, it is readily understood that it is the writing alone that is to speak; but this is equally true of contracts which by the convention of the parties have assumed a similar form. The writing is the contractual act, of which that which is extrinsic, whether resting in parol or in other writings, forms no part. If through fraud, accident, or mistake it fails to express the contract as it was intended to be made, equity will reform it upon proper proof. But still it is the writing as corrected that is the measure of the parties' undertaking, and they cannot be otherwise held. There is much admitted confusion on this subject, due in part to the way in which in some jurisdictions the rule is administered; and the

failure to recognize the true basis of it is all that creates any difficulty here. * * *

"Unless, therefore, the rule which prohibits the introduction of extrinsic evidence is to be disregarded, the writings must be taken as expressing the contract between the parties, and there was no waiver by the plaintiffs of their right to adhere to them, and to have the case determined thereby, merely because parol evidence as to what passed outside of them was permitted to come in. The competency of this evidence, as a matter of law, to affect the writings, was not necessarily conceded by the failure to object at the time. Moody v. McCowan, 39 Ala. 586; Hamilton v. [New York Cent.] R. Co., 51 N. Y. 100."

In Bushnell v. Elkins, supra [34 Wyo. 495, 245 Pac. 306], the court said: "Even * * * though the testimony had been admitted without objection, that would not affect the right or the duty of the court, subsequently, upon motion to direct a verdict, which was made in this case, to disregard such testimony, if in fact in violation of the rule aforesaid. (Citing cases.) This must be so, because, as heretofore stated by this court in the case of Natrona Power Co. v. Clark, 31 Wyo. 284, 297, 225 Pac. 586, the rule mentioned is not in fact a rule of evidence, but a rule of substantive law. (Citing authorities.) When parties have deliberately put their engagements in writing, and such writing is complete on its face, and is certain and definite as to the objects of their engagement, it is conclusively presumed that the whole contract of the parties and the extent and manner of their undertaking was reduced to writing, and cannot be contradicted, altered, added to, or varied, by parol or extrinsic evidence. It has long been recognized by the courts that a different rule would soon render instruments in writing of no value, and the temptations to commit perjury would be increased. 1 Greenleaf on Evidence, Sec. 275; 22 C. J. 1070, 1074. Such parol testimony is not excluded because of no probative value, but because it is against the policy of the law that written contracts should be overturned in that manner. It is rejected, as stated in Thayer in

316

the work aforesaid, page 401, because, if admitted, it could be of no use.''

In Gore v. Bingaman, supra [29 Cal. App. (2d) 460, 85 Pac. (2d) 181], the court said: ''The parol evidence rule is not only a rule of evidence but one of substantive law. If such evidence is admitted upon the trial it may be urged on appeal that such evidence should be disregarded. Even if the evidence is allowed without objection, the same rule applies.''

''An executed contract is one, the object of which is fully ▊ performed. All others are executory.'' Sec. 7552, Revised Codes. ''An executed contract is one where nothing remains to be done by either party. An executory contract is one in which a party binds himself to do or not to do a particular thing in the future.'' Lewis v. Lambros, 58 Mont. 555, 194 Pac. 152, 154.

''A contract to sell land, being preliminary to the sale and ▊ not the sale itself and also subject to recission by agreement between the parties, is an executory contract. A contract for the sale of land is wholly executory until the conveyance is made, * * *.'' 8 Thompson on Real Property, Perm. Ed., Sec. 4564, p. 489.

Since they put their contract for deed in writing there could ▊ be no subsequent alteration binding on the parties unless same were in writing or by an executed contract. Sec. 7569, Revised Codes; Rowe v. Emerson-Brantingham Implement Co., 61 Mont. 73, 201 Pac. 316; Storm & Butts v. Lipscomb, 117 Cal. App. 6, 3 Pac. (2d) 567; California Securities Co. v. Grosse, 3 Cal. (2d) 732, 46 Pac. (2d) 170; Twohey v. Realty Syndicate Co., 4 Cal. (2d) 379, 49 Pac. (2d) 819. The alleged oral agreement on which plaintiff relies was for a deed which Tetrault, the owner, never chose to make. The alleged agreement has not been fully performed; it is purely executory and for this reason, even though proven, it would be wholly ineffectual to alter the written contract for deed.

The testimony introduced by plaintiff at the trial tends to show promissory representations as to future conduct on the

part of the decedent such as "I *am going* to deed this place to you." "I *am going* to fix up the papers." "I *am going* to get the contract and turn the deed over to Mr. and Mrs. Bauer." "I *am going* to make my will."

Mrs. Marie Karstens, a witness for plaintiff, resides about a mile from the hay ranch. She testified that when she first met the plaintiff and his wife they were working for Tetrault on his upper ranch; that subsequently they moved to Tetrault's lower ranch where she frequently visited them. She further testified: "Three or four years after they moved down there, I said, Mrs. Bauer you surely have a lovely home. She said, the house is ours, but the land is not ours. Tetrault, he was right there, he said, you don't need to worry about that, I am going to deed this place to you. That is going to be yours. That was some years after they moved down there. That must have been in 1923 or 1924." This conversation is alleged to have occured some eleven or twelve years prior to the time Tetrault and plaintiff entered into the written contract for the sale of the place to plaintiff for $6,400. Mrs. Karstens also testified that on April 15, 1942, being the day before Tetrault died, she accompanied plaintiff's wife to the hospital in Malta, Montana, where they talked with Tetrault, at which time "He said, Mrs. Bauer, you don't need to worry, I am going to fix up the papers. * * * He said, if anything happens to me the papers were there with nurse, and they were going to make out a will."

Mrs. Rena Grimsley, a witness for plaintiff, about 12 miles from the hay ranch. She testified that Mr. Tetrault had first hired plaintiff to work as a hired man on his upper ranch; that after several years plaintiff and his wife "moved at this other place and worked for him for a couple of years, and then they leased the place. * * * He (Tetrault) took them in when they didn't have anything, and he treated them just like they were his own children, and he set them upon their feet"; that about two or three weeks before his death, Tetrault "told me and my husband, he said, I went to town last week and had Gabriel make

out my income tax, and he said, I told him then I would come in and have him make a will out, and Gabriel said, I can do that right now. He said, no, I haven't got time. * * * I am going back as soon as I get my ice put up. * * * I am going to town and make my will. * * * I am going to take that contract and give the deed over to Bauer * * * they have done enough work on the place. I never expect them to pay me another cent. * * * I am going to make my home there the rest of my time. * * * He said, in case I don't get back to town * * * if I die before I get that deed turned over, I want you to make this statement, that it is my intention for them to have it. * * * He was going to deed it to Bauer and his wife, and there was a contract pending for it. He said, when he went to town he was going to go to the bank and get this deed and tear that contract up. * * * He said, I am going to get the contract and turn the deed over to Mr. and Mrs. Bauer. That was the last time I ever talked to him. * * * He didn't tell me what all he was going to do in the will. * * * He mentioned that deed and would turn it over. He said, I am going to make my will."

William Armington, a witness for plaintiff, testified that in 1939 or 1940, he was told by Tetrault that the latter was not going to sell the lower ranch from under Bauer. "He said he wanted Bauer to have the place."

Mrs. William Armington, a witness for plaintiff, testified that in 1940 she and her husband stayed with the plaintiff and his wife at the lower Tetrault ranch for several days; that Albert Tetrault was there at that time and told her that plaintiff and his wife "had been kinder to him than anybody ever had"; that, "Mr. Tetrault told me that he wanted them to have that place, and that he expected to make his home with them, at the time he wanted to sell his upper place to my husband. I asked him where he planned to live if he sold his place to us. He said he intended to make his home with Mr. and Mrs. Bauer."

Mrs. Henry Bauer, wife of plaintiff, over the objection of

defendants, testified to the facts of direct transactions and oral communications between her husband, herself and deceased occurring when no other persons were present. She testified that in 1939 the deceased told her and plaintiff that deceased had just dissolved his partnership with one Robetorie and, "He said, I am going to stay with you. I am going to sell my place to Armington, and I am going to make my home with you * * * the place I sold you folks I am going to give you the deed. I said, Albert, it is just talk, but we must have something to show for it. He said, I am going to deed the place over to you and destroy the contract, and he was sure that Bill was going to buy that place. * * * He said, you don't have to pay any more as long as you pay the taxes and water, the place is yours. He said, you can fix the ditches, and alfalfa and the place is yours, and I want to stay with you. * * * I said, we put up alfalfa, he was a great man for alfalfa. We put in alfalfa and fixed ditches, whatever we have to fix them. He said, you sure make home." Relative to the conversation had at the hospital at Malta, in the presence of Mrs. Karstens, on the day before decedent died, Mrs. Bauer testified: "I said, Tetrault, wouldn't you like to straighten your business out. He said, you take me home, I want to go to your place. I said, they wouldn't allow me to take you, that I wished — but I said, I wish you would straighten your business out. He said, you take me home for a few days, and then your husband will take me out to Malta, and then we will straighten this out. That is all he said. I didn't say nothing either. I thought he was sick. I didn't go to beg for nothing. I just asked him if he would like to straighten his business out." On cross-examination the witness testified that when she saw Tetrault in the hospital he wanted to go home with her saying, "Then we come back, he said, when I feel better."

To convey title of the hay ranch to plaintiff requires an instrument in writing. Tetrault, the owner, throughout his lifetime and to his dying day steadfastly refused to make or sign any such writing. Now that he is dead the court should

not direct the making and delivery of the writing which the deceased declined to make especially in the face of a valid written agreement that binds decedent's representatives and heirs to deliver a deed only when the contract has been fully performed by plaintiff.

The plaintiff was permitted, over defendant's objections, to testify concerning conversations which plaintiff and his wife are alleged to have had with the deceased relative to the transactions upon which plaintiff's claim is based.

Sec. 10535, in part, provides: "The following persons cannot be witnesses: * * * 3. Parties * * * to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted against an * * * administrator upon a claim or demand against the estate of a deceased person, as to the facts of direct transactions or oral communications between the proposed witness and the deceased, excepting when the * * * administrator first introduces evidence thereof, or when it appears to the court that, without the testimony of the witness, injustice will be done." In the instant case the administrator introduced no evidence as to the facts of direct transactions or oral communications between plaintiff and his wife and the deceased, and since the written contract for deed of November 1935 is admitted by all the parties and since the testimony tends to establish nothing other than a subsequent oral executory agreement for a deed, we fail to see the justification for allowing the plaintiff to testify concerning such direct transactions and oral communications between himself and the deceased.

When Albert Tetrault died the title to his 640-acre hay ranch stood in his name. Here an attempt is made to compel a transfer of that title to plaintiff who seeks to establish his claim upon oral negotiations which he and his wife say were had between them and Albert Tetrault. Albert Tetrault, the only person who could deny or explain those negotiations, is dead, and the statutes, Secs. 7519, 7593, 10613, 10535, and 7569, Revised Codes, furnish the Tetrault heirs with their only de-

fenses and protection against a claim of this character. The lips of Tetrault are sealed in death and the lips of plaintiff and his witnesses are closed by the statutes which forbid them to relate oral negotiations, communications, and admissions against interest to alter, set aside and defeat an existing formal solemn writing signed and acknowledged by Tetrault and plaintiff setting forth their agreement respecting the making and delivery of a deed to this identical property. See Lewis v. Patton et al, 42 Mont. 528, 113 Pac. 745; Langston et al v. Currie et al., 95 Mont. 57, 26 Pac. (2d) 160.

The work which plaintiff performed on the ranch was only such as he would have been required to do as operator thereof whether as lessee or prospective purchaser. All such work could have been readily measured and compensated in money.

On his cross-examination plaintiff testified:

"Q. It was necessary to do that diking, so you could irrigate that spring? A. Yes, I had to have it.

"Q. Whether you had this agreement or not, wouldn't make any difference? A. No sir.

"Q. And you still had to build those dikes in the spring of 1939, if you were going to farm that place? A. Yes sir.

"Q. Now, so far as the care that you gave to Mr. Tetrault, furnishing meals, or stuff like that Mr. Bauer, how much would you estimate that is worth a month? A. I never figured it out.

"Q. How much would it cost you to board a man a month? A. I never charged him anything.

"Q. Do you have a hired man? A. Yes sir.

"Q. Don't you have any idea what it costs to board them? A. Exactly, I wouldn't know myself; it belongs to Mrs. That board, she does the cooking.

"Q. Would thirty dollars a month cover it? A. It should, thirty dollars.

"Q. That is a dollar a day? A. Yes sir.

"Q. Don't you think that would be a pretty fair compensation for the time that Albert Tetrault stayed with you? A. Yes sir. * * *

"Q. Then as I understand it, the time that Albert Tetrault came down to your place in February of 1939, was right at the time that he had broken up with Robetorie at the ranch? A. Yes sir.

"Q. He was very much worked up at that time, was he not? A. Yes sir.

"Q. The break-up between he and Robetoire had been very bitter. A. Yes sir.

"Q. Mr. Bauer, if Albert Tetrault had come down to your place there any time, wouldn't you have been perfectly willing to feed him and give him a bed? A. Yes sir.

"Q. You would have been perfectly willing to do that at any time, would you not? A. Yes sir.

"Q. Based upon the twenty years of intimate friendship? A. Yes sir.

"Q. And when you set forth in your complaint, if he had not made this agreement with you, you would not have given him any room or any meals— A. Oh, I would.

"Q. And so far as the acquaintanceship existing between you and your wife and Albert Tetrault, this contract or new agreement had nothing whatever to do with it? A. No sir.

"Q. That was based upon the very intimate relationship? A. Yes sir.

"Q. The fact that when you came to the country you went to work for him—. A. 1909.

"Q. He took you up here to this Beaver Creek place? A. Yes sir.

"Q. And he left you there all these years? A. Yes sir.

"Q. And he was a mighty fine fellow? A. Yes sir.

Irrespective of what the various witnesses testified that deceased said he *was going* to do at some indefinite time in the future, the fact remains that in his lifetime Albert Tetrault made no deed, he made no will and he did not cancel or destroy the partly performed written contract for deed. Promissory representations as to future conduct are neither actionable nor matters of defense. First National Bank v. Sagerson, 283 Pac.

406, 129 A. 333; Investors' Finance Co. v. Bodnar, 87 Colo. 498, 289 Pac. 599; Bushnell v. Elkins, supra; Yuba Mfg. Co. v. Stone, 39 Cal. App. 440, 179 Pac. 418; Shaw v. McCaslin, 50 Cal. App. (2d) 467, 123 Pac. (2d) 102.

So far as is shown by the record in this case, the contract for deed deposited by Tetrault in the bank for safekeeping is the only written evidence left by him of his intentions respecting the transfer or disposition of his lower or hay ranch. That document bears the signature and the acknowledgement of both the decedent and plaintiff. It constitutes their agreement respecting the hay ranch. By it the plaintiff is concluded in the absence of a subsequent contract in writing or executed oral contract covering the matter. Sec. 7569, Revised Codes.

The evidence shows that plaintiff has a considerable equity in the property in question but before he is entitled to a deed therefor he must first pay the balance of the agreed purchase price called for by the written contract.

There is no competent evidence to establish that plaintiff is entitled to the specific performance of the alleged oral executory contract and the judgment is therefore contrary to the evidence and the law. Accordingly the judgment and decree is reversed and the cause remanded with directions to enter judgment for defendant dismissing the action with prejudice and awarding defendants their costs.

Mr. Chief Justice Johnson and Associate Justice Cheadle, J., concur.

Mr. Justice Angstman (dissenting):

The majority opinion seems to rest upon the proposition that the trial court erred in not finding that the oral agreement relied upon by plaintiff constituted a modification of the written contract and that it was not sufficiently performed by the parties to meet the requirements of Sec. 7569, Revised Codes. I think it is fallacious to say that the oral agreement constituted but a modification of the written contract. According to the evidence offered by and in behalf of plaintiff the written con-

tract was completely abandoned and a new agreement made which superseded and took the place of the written agreement. The proof shows that the deceased before his death stated that it was his intention to destroy the original contract and give plaintiff a deed to the property. If the oral contract is given consideration, then it was the desire of the deceased to completely terminate the written agreement and make a new one in its stead. The new contract did not depend at all upon any of the provisions of the written contract. In no sense can it be said that the oral agreement was a modification of the written agreement.

This case on this point is controlled by that of Kester v. Nelson, 92 Mont. 69, 10 Pac. (2d) 379, 380, in which case this court said: " 'Persons competent to contract can as validly agree to rescind a contract already made as they could agree to make it originally. However, as a contract is made by the joint will of two parties, it can be rescinded only by the joint will of the two parties. It is obvious that one of the parties can no more rescind the contract, without the other's express or implied assent, than he alone can make it. But if the parties agree to rescind the contract, and each one gives up the provisions for his benefit, the mutual assent is complete, and the parties are then competent to make any new contract that may suit them.' 6 R. C. L., Sec. 304, p. 992. 'Again, a contract need not be rescinded by an express agreement to that effect. If the parties to a contract make a new and independent agreement concerning the same matter, and the terms of the latter are so inconsistent with those of the former that they cannot stand together, the latter may be construed to discharge the former.' Id., Sec. 307, p. 923."

Hence, as I view it, all that is said in the majority opinion with reference to the statutory requirements for the modification of a written contract has no application to this case. It is enough here that there was sufficient partial performance of the oral contract to meet the requirements of the statute of frauds. That the court was warranted in finding there was

sufficient compliance with the oral contract to take it without the statute of frauds, I think, cannot be questioned. Plaintiff and his wife, pursuant to the agreement, took Mr. Tetrault into their home and treated him as one of their family. Mrs. Bauer mended and washed his clothes, provided his meals, furnished him with a feather bed, and otherwise administered to his comfort. It is well settled that an oral agreement to convey real estate will be specifically enforced where there is partial performance by the donee or intended grantee, or where acts have been done by him in reliance upon the promise which will place him in a situation where he will be prejudiced unless the promise is performed. 101 A. L. R. 985. This is the rule in this state. Shaw v. McNamara & Marlow, 85 Mont. 389, 278 Pac. 836. This principle was applied in the following cases: Rowe v. Eggum, 107 Mont. 378, 87 Pac. (2d) 189; Erwin v. Mark, 105 Mont. 361, 73 Pac. (2d) 537, 113 A. L. R. 1064.

Furthermore, if in spite of the record to the contrary we treat the oral contract as a modification merely of the written contract and not a new agreement, I still believe there was sufficient compliance with the oral agreement to entitle plaintiff to the relief demanded. The case is no different than if we had before us a case where the written contract called for installment payments and prohibited the grantee from making full payment prior to the time when the installments were due. Let us say that a subsequent oral agreement modified the contract, giving the grantee the right to make full payment at any time, and let us say that he did so and that the payment was accepted by the grantor, and then the grantor refused to surrender the deed. Would a court of equity say that it was powerless to compel the surrender of the deed simply because the subsequent oral contract had not been fully executed? I think not.

The statutes prescribing when and how a written contract may be modified were designed merely to guard against fabrication. Parties may, by a meeting of the minds, contract orally to modify a written contract just as effectively as they could contract originally by oral agreement, excepting of course that

the statute of frauds would have to be met. But, if there is sufficient performance to meet the statute of frauds, the purpose of the statute is complied with.

This conclusion does not conflict with the majority opinion in the case of Ikovich v. Silver Bow Motor Car Company, Mont. 157 Pac. (2d) 785. The author of the majority opinion in this case said in his dissenting opinion in the Ikovich case that the parties may abrogate a written contract by subsequent oral agreement, or may waive its terms without writing. There can be no doubt about that rule. The difficulty in the Ikovich case was that the majority could not find any evidence showing a waiver. The majority opinion in that case pointed out that there was nothing in the record to show any act on the part of the Silver Bow Motor Car Company in recognition of the alleged subsequent oral agreement, and for that reason the doctrine of waiver or estoppel had no application. The only difference between that case and this is that here there is evidence of acts on the part of the deceased in recognition of the oral agreement. There is evidence that he moved into the home of the plaintiff and accepted the benefits of the oral agreement by having his meals provided for and his clothes mended and washed. Likewise he permitted plaintiff and his wife to occupy the farm in question for four years after the last payment of principal or interest without taking any measures to enforce the written contract, and this, I think, is a circumstance tending strongly to support the conclusion of the trial judge that the agreement as alleged was made and carried out by the parties excepting only as to the bare matter of executing the deed.

While generally speaking an agreement by one person to discharge another from the obligations of a written contract has no validity as an executory agreement but to be effectual must be executed by surrender of the written contract, "there is a class of cases, however, where a written contract may be modified by a mere oral agreement which, at its inception or as a mere executory agreement, would have no binding effect, yet by being acted upon by the parties until it would work a fraud

or injury to refuse to carry it out, becomes binding and effectual as a contract." 12 Am. Jur., "Contracts" Sec. 407, p. 987, note 15.

The rule was stated in Moses v. Woodward, 109 Fla. 348, 140 So. 651, 141 So. 117, 147 So. 690, and followed in Carter Realty Co .v. Carlisle, 113 Fla. 143, 151 So. 498, 499, as follows: "As against the contention of appellants, appellees contended that the agreement brought in question cannot have attributed to it the importance claimed because it was in parol and to do so would modify the mortgage, a written instrument. The rule is well settled that an executory or parol agreement will not be permitted to abrogate or modify a written or sealed instrument, but this rule is not without its exceptions. A written contract or agreement may be altered or modified by an oral agreement if the latter has been accepted and acted upon by the parties in such manner as would work a fraud on either party to refuse to enforce it. 6 R. C. L. 917; Bishop v. Busse, 69 Ill. 403; Pratt v. Morrow, 45 Mo. 404, 100 Am. Dec. 381; American Food Co. v. Halstead, 165 Ind. 633, 76 N. E. 251; Munroe v. Perkins, 9 Pick, Mass., 298, 20. Am. Dec. 475; Beach v. Covillard, 4 Cal. 315; Siebert v. Leonard, 17 Minn. 433, 17 Gil. 410; Bassini v. Brockner, 10 N. J. L. J. 105." And see to the same effect, Thurston v. Ludwig, 6 Ohio St. 1, 67 Am. Dec. 328.

Likewise, treating the oral agreement as simply a modification of the written contract, I think the action of the trial court should be sustained for this additional reason; evidence of the oral agreement was admitted without objection. Counsel for the defendant did not raise the point in the lower court, and, in fact, has not raised the point in this court. This court is taking cognizance of the legal question of its own motion. It is putting the trial court in error on a point not raised in the trial court. It is changing the theory upon which the case was tried in the lower court.

In the lower court all parties considered the evidence of the subsequent agreement as properly before the court. The major-

ity opinion holds that the parol evidence rule is one of substantive law and not one of evidence. There are cases that support that view. Most of the cases relied upon in the majority opinion are cases dealing with the question of antecedent oral statements which the law declares are merged in the subsequent writing. Even on that point the overwhelming weight of authority is to the contrary. See exhaustive note in 92 A. L. R. 812, where it is stated as a general rule that whether it was error to admit parol evidence to contradict or vary a valid written instrument, when admitted without objection, will not be considered for the first time on appeal.

The reason for the rule is that the parties to an action have the right to make a rule of evidence for their own case and are presumed to have done so when testimony, otherwise incompetent, is received without objection and no effort is made to have it stricken or disregarded by the court. That is the situation here. Moreover, there is a wide difference between the rule that prior oral negotiations may not alter a subsequent written agreement covering the subject matter and the subsequent modification by parol of a prior written agreement. The writing does not preclude the parties from making a subsequent contract, if the statute is complied with, but a written contract does preclude evidence of prior oral stipulation touching the subject matter of the writing. It is my view that there is substantial evidence in the record to sustain the finding and decree of the trial court and this being so it is our duty to affirm the judgment. Sanders v. Lucas, 111 Mont. 599, 111 Pac. (2d) 1041.

The majority opinion makes reference to Sec. 10535, Revised Codes, and holds that there was no justification for allowing plaintiff to testify as to facts of direct transactions and oral communications between him and deceased. The statute allows such testimony "when it appears to the court that, without the testimony of the witnesses, injustice will be done."

I think the determination of this question rested in the discretion of the trial court and that there was no abuse of dis-

cretion here. Rowe v. Eggum, 107 Mont. 378, 87 Pac (2d) 189, and cases therein cited.

The majority opinion also quotes some of the testimony of plaintiff given on his cross-examination which is evidently intended to show that a part of the services of plaintiff could be measured in dollars and cents and, hence, specific performance of the contract should be withheld. This evidence does not show that all of the services had a definite, ascertainable pecuniary value. This part of the majority opinion, like that relating to Sec. 10535, does not prop or bolster the opinion on the main point as they are evidently intended, for these questions if erroneously decided by the trial court (but this I do not admit) would simply lead to a new trial or to a modification of the judgment and not to a dismissal of the action. I think this court is not warranted in disturbing the trial court's conclusion. The effect of the majority opinion is to say that Mr. Tetrault made a mistake when he planned to have his property diverted from distant relatives, none of whom he had seen for forty years, and applied in fulfillment of his contract to plaintiff who had cared for him in his declining years as if he were one of plaintiff's own family.

Mr. Justice Morris:

I concur in the above dissenting opinion of Mr. Justice Angstman.