## No. 12,300.

INVESTORS FINANCE COMPANY *v.* BODNAR.

(289 Pac. 599)

Decided June 9, 1930. Rehearing denied June 30, 1930.

Mr. HENRY HOWARD, for plaintiff in error.

Mr. JAMES R. HOFFMAN, Mr. CARLOS A. RICHARDSON, for defendant in error.

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS action by the Investors Finance Company against Joseph Bodnar, the defendant, is to recover on his promissory note dated June 28, 1921, in the principal sum of $750, payable to the Thrift Mercantile Company or order. The note was payable in eight separate installments, the last payment becoming due and payable March 1, 1922. Three payments of $100 each had been made thereon, leaving a balance due of $450. The complaint further alleges that plaintiff is a bona fide purchaser of the note

before maturity. The only defense to the note which calls for consideration is the amended third defense of the answer which admits the execution of the note and pleads no consideration. The replication to this third defense alleges that the note was given for 100 shares of preferred stock in the Thrift Mercantile Company and that defendant is a stockholder thereof. The replication proceeds to state that on the 11th day of December, 1922, in the United States District Court for the District of Colorado the Thrift Mercantile Company, the payee of this note, was adjudged a bankrupt, and that the plaintiff is a subsequent creditor of the Thrift Company and that this note, together with other notes, was a part of the property of the Thrift Company, and constituted a trust fund out of which the plaintiff finance company is entitled to be paid and that this note, with other notes and accounts, was pledged to the plaintiff before maturity. The plaintiff filed its claim against the Thrift Company with the referee in bankruptcy, which claim was, in June, 1924, allowed as a secured claim in the sum of more than $126,000, and among the securities of the Thrift Company there listed is the note sued on in this case.

It will be observed from the foregoing statement that the vital issue in the case is: (1) Whether there was a failure of consideration for the note; and, if so, (2) whether the plaintiff is a holder in due course without notice of any infirmity attaching to the note. These issues were submitted to the jury by the trial court and the findings and verdict were in favor of the defendant maker of the note and judgment went accordingly.

The amended third defense of the answer states that the defendant received no valuable consideration for the note and there has been a failure of consideration. In this defense the defendant alleges that he was induced by the Thrift Mercantile Company, payee, to subscribe for 100 shares of its capital stock, which was $10 per share; that he paid in cash the sum of $250 on this subscription

and executed his promissory note to the Thrift Company in the sum of $750 for the balance thereof, which is the note here in suit; that he subsequently paid the Thrift Mercantile Company the sum of $300 on the note and that at no time has a certificate of stock ever been tendered, offered or delivered to the defendant, and, in fact, the stock was never issued to him. The answer further says that the defendant was induced to subscribe for this stock on the consideration and representation and agreement of the Thrift Company that it would construct, operate and maintain a large store at Oak Creek, Colorado, where the defendant resided, and that as a stockholder and on account of his stock subscription the defendant could purchase and receive groceries and other merchandise from such store at a discount and saving to him of 30 per cent below the regular retail price; that these inducements and promises were the substantial part of the consideration to him in his subscription for stock and his signing of the note in question; that the Thrift Company never observed, kept or performed or complied with these representations and inducements; that no store was ever constructed, operated or maintained by the Thrift Company in Oak Creek, and defendant has been unable to purchase goods at the guaranteed discount of the Thrift Company, or at all; that within a short time after this subscription of the defendant from the Thrift Company it became insolvent and was adjudged a bankrupt in the Federal District Court of Colorado, and the company was dissolved and was never reorganized and is not now doing business.

This defense further says that the various officers and organizers of the plaintiff finance company were stockholders and officers in the Thrift Mercantile Company and that the plaintiff finance company was formed for the purpose of taking over the notes of the Thrift Company, with the intention to deprive defendant and other subscribers of stock in the latter company of their defenses on the notes and counterclaims arising thereun-

der, if any, and that this note was procured by the plaintiff, if at all, by fraud, through and with the connivance of the Thrift Company.

■ 1. Possibly the foregoing summary of the pleadings, in view of the conclusion which we have reached, may seem unnecessarily long, but we have deemed it best to present the issues at length as made by the pleadings upon which the case was tried. We premise the discussion by saying that the evidence in behalf of the defendant responsive to the issues tendered by him, was legally sufficient clearly to establish the defense which he interposed. A large part of the plaintiff's opening brief is devoted to the proposition that to constitute an actionable fraud the representations relied upon must not only be false, but must relate to a past or existing fact and that fraud cannot be predicated upon a false representation as to matter of intention or upon an unfulfilled promise to perform an act made with the intention not to perform it, although such representation or promise influenced the complaining party to enter into the contract or transaction. If this were an action by the defendant seeking relief as against the plaintiff finance company under this promissory note upon the ground of fraudulent representations, and plaintiff relied upon an unfulfilled promise as such a representation, the proposition relied upon here by the plaintiff company might be good. This, however, is an action by an assignee of the payee of the note to recover upon it. The defense upon which the defendant relies is failure of consideration, not fraudulent representation. The allegation of the third defense is that the consideration to defendant for executing and delivering the note to the Thrift Company was its unfulfilled promise to construct, operate and maintain a large store in Oak Creek, Colorado, where the defendant would be able to purchase goods at a discount much below the current prices.

■ 2. Plaintiff apparently places much reliance upon the fact that the Thrift Company, the payee of this

note, was adjudged a bankrupt in the Federal District Court for the District of Colorado and that in proceedings there the plaintiff finance company was adjudged to be a creditor of the Thrift Company in an amount exceeding $100,000, and that the district court set over to the plaintiff finance company various assets of the Thrift Company, including the promissory note involved in this action. Plaintiff's counsel contends that this was equivalent to an adjudication by the federal court of the validity and a binding obligation of this note upon the defendant. Such an adjudication has not such effect. This note was listed by a bankrupt as a part of its assets. The federal court, in setting over the same to the finance company, did not thereby adjudge that the note in question was an enforcible obligation against this defendant. It merely transferred this note, along with others which were listed as assets of the bankrupt Thrift Company, to one of the creditors of the bankrupt, namely, the plaintiff finance company. The defendant received no notice of any proceedings in the bankruptcy matter. He had no opportunity to be heard and there were no issues presented as to the binding obligation of this note upon him, either with respect to the Thrift Company or to the plaintiff. If the setting over of this note to the finance company amounted to a judgment on the note in favor of the finance company, it is strange, indeed, that it would institute this suit upon a note which had already passed into judgment. The action here is an action by the finance company on the note itself and not upon a judgment into which the note had become merged. This case, without objection by plaintiff, was submitted by the trial court to the jury upon the theory that the note in question was still a promissory note and had not been merged into a judgment, and that the defense, and the only defense interposed, was that there was a failure of consideration in that the Thrift Company wholly failed in its promise to erect a store at Oak Creek as previously herein stated it promised to do. The court properly in-

structed the jury upon that theory and the jury found for the defendant and we cannot disturb its finding of facts, in so far as it concerns the evidence in support thereof.

 It is a settled doctrine in the courts of the country generally that the trustee in bankruptcy takes not as a bona fide purchaser for value, but as the bankrupt himself held the property, subject to all valid claims, liens and equities, the validity of which claims is to be determined, in the absence of federal statutes, by the local law as evidenced by the decisions of the state courts. The trustee takes only such title or interest as the bankrupt himself had at the time of the filing of the petition. Equities of third persons in respect to the property of the bankrupt are accordingly not impaired by the adjudication and appointment of the trustees. 7 C. J., p. 133, § 226. See also page 130, § 219; *Jump v. Sparling*, 218 Mass. 324, 105 N. E. 878. The syllabus in this latter case is that a trustee in bankruptcy, when suing on a negotiable promissory note of which his bankrupt is the payee, has the rights that an attaching creditor would have, which can be no greater than those of the bankrupt. The Massachusetts case, and the authorities collected in Corpus Juris, supra, lay down the doctrine that a trustee in bankruptcy, and, of course, the same doctrine is applicable in the case before us to the plaintiff who is the assignee of the trustee, has only the rights that an attaching creditor would have, and no more, and these rights can be no greater than the bankrupt has himself. It is entirely proper, therefore, in this case for the maker of this note to have the judgment of the trial court upon his defense of no consideration here determined. The court committed no error in its instructions upon the controlling question of the case, and the verdict of the jury was amply sustained by the evidence. The jury here, under proper instructions, found that the consideration for this note failed. Plaintiff is not a holder for value, and it failed to prove that it acquired the title as a holder

in due course, for it was charged with notice of the defective title of its assignor.

There is one instruction, No. 10, as given by the court, to the effect that the law assumes that a corporation has notice of the fraud of its agents, and if the jury believes from the evidence that the defendant's signature to the note in question was obtained by fraud on the part of the salesman of the Thrift Company, then the jury might consider such fraud as a defense. Segregated from all the other instructions and without reference to the testimony in the case, this instruction might well have been omitted by the court, but we consider the error, if any, is without prejudice. Aside from this we do not find that the proper objection to this instruction was taken by the plaintiff. This promissory note in suit was past due at the time the bankruptcy court transferred the note, among other assets, to the plaintiff finance company. The plaintiff company took this note subject to any valid defense, such as failure of consideration, which the maker of the note has against the Thrift Company. We say this advisedly and base our statement upon the record.

3. Aside from the foregoing, which is conclusive, the plaintiff finance company was organized in whole or in part by the officers and stockholders of the Thrift Mercantile Company as its agency for the purpose of assisting the Thrift Company in carrying out its business schemes of establishing branch stores throughout the state. The scheme of this Thrift Company was to take subscriptions to its capital stock and, as in the present case, to take the note of the purchaser of the stock, with the understanding between the parties that though the stock might be considered as a consideration for the note, the real consideration was the right which holders of the stock had to purchase of the Thrift Company at its stores goods and merchandise at much below the current prices. The officers of the Thrift Company and the finance company were not identical through-

out, but officers and stockholders of the one company were also officers and stockholders of the other. The two companies had, for a time at least, as conceded by plaintiff's counsel in his briefs, adjoining offices in the same building with an inside entrance leading from one office to the other. The case is not in its strictest and fullest extent one where all the officers and directors of two companies are the same, an interlocking directorate, but we think the evidence sufficiently discloses that the officers of each of these companies were well advised of the transactions of the other. The same attorney was counsel for both companies throughout their organization and the same controlling influence of the two companies was practically identical. What the officers of the one company knew about these stock subscriptions and the method of conducting business by the companies was known to the officers of the other. The court might well have directed the jury to find for the defendant. Instead of doing so it submitted to a jury for its findings the issues presented and, with the possible exception of instruction No. 10, which we hold harmless, there was no error in any of its instructions. The scheme of this Thrift Company was one well calculated to seduce and deceive the unwary. The defendant in this case was a man could neither read nor write, advantage of whom was taken by a soliciting agent of the Thrift Company. The evidence sufficiently shows that the sole consideration of value for this note was an agreement on the part of the Thrift Company, payee, consisting of an unfulfilled promise.

The judgment is affirmed.