[Civ. No. 13194. Second Dist., Div. Two. Mar. 16, 1942.]

FRANK L. SHAW, Respondent, v. W. E. McCASLIN et al., Appellants.

468

Milo W. Horn for Appellants.

Frank L. Simons for Respondent.

HANSON, J. pro tem.—This is a suit upon a promissory

note in the principal sum of $15,000, with a separate count for money had and received. Respondent, who was the payee of the note, recovered judgment against appellants, its makers, for the sum of $13,500 and attorney fees of $500, less certain amounts which the court found had been paid by appellants to respondent. As the evidence disclosed that plaintiff had advanced to the defendants the sum of $13,500, and the court found that this sum represented the consideration for the note, the trial court concluded the recovery should be limited to that sum and so gave judgment accordingly.

Essentially the only question presented to us by appellants is whether there was substantial evidence to sustain the judgment. However, as the solution of that question depends largely on the issues, we think it will help clarify the controversy to narrate briefly a part of the factual background.

The defendants were lessees in an oil and gas lease, which while duly executed had not been delivered to them and it was not deliverable until they should bring in an oil well on the property and comply with certain conditions. The defendants proceeded with the drilling of a well, but shortly ran out of ready money to carry on the operation. At that time, March, 1939, plaintiff was induced to advance defendants $5,000, with the understanding that thereby he was to have an undivided interest in lessees' interest in the lease. He was told that an application for a permit to sell interests was on file with the Corporation Commissioner but no permit had been issued. Later the defendants found they were again short of money and so plaintiff was again induced to invest $5,000. Under like conditions he made further ''investments'' until his total outlay was $13,500. The well was completed and placed on production on April 25, 1939. It was a small producer. Prior to August 4, 1939, the Commissioner of Corporations initiated an investigation to ascertain whether the defendants had sold interests in their lease. The record indicates that the defendants told the commissioner that they had not sold any interests but that the money they had received from plaintiff represented a loan by him to them. A controversy ensued between plaintiff and the defendants, and as a result defendants on August 4, 1939, gave plaintiff the note in suit and coincident therewith the parties entered into a written contract. The contention of the appel-

lants as to the effect of these documents is set up in their answer.

The first defense urged in the answer is that the note was without consideration, that it was made and delivered with the understanding and agreement of the parties thereto that it created no legal obligation on the part of the makers and that plaintiff as payee thereof agreed he would not directly or indirectly enforce or attempt to enforce collection of it. The second defense was predicated on the terms of the written contract above referred to. Shortly stated, the contract recites that appellants mortgage to respondent a one-half working interest in the oil and gas lease (mentioned above) to secure payment of a certain note made by them to respondent (the note in suit); that the note evidences a one-half interest in the working interest in the lease; that as long as the note is outstanding appellants will pay over to respondent one-half of the proceeds of any oil or gas sold from the leasehold, subject to the lessor's interest therein, except that they will retain one-third of such half until they have in their hands therefrom the sum of $1,500; that the parties shall make a joint application to the Commissioner of Corporations for a permit enabling appellants to transfer title to a half interest in the lease to respondent; that if such permit is not granted respondent and appellants shall operate the leasehold as a limited copartnership, so that respondent shall have a one-half working interest and all profits therefrom; that the well already drilled on the leasehold constitutes a joint venture of appellants and respondent. On the issues as thus made the case went to trial.

We think it self-evident that the first defense is not a legal defense, and so evidence to sustain it was inadmissible. The private understanding or intent entertained by appellants was immaterial. What they promised was determined by the normal meaning and implications of their written promissory note, not by their intent as to the effect it should or should not have or what respondent would or would not do with it. Appellants attempted to make out that respondent led them to make the note on the ground he wanted it for two purposes: first, to show it to the Commissioner of Corporations so as to indicate his transaction with appellants involved a loan of money and not a purchase of securities for which a permit was required; second, to use the note as collateral with his bank. Whatever the truth may have been,

it is evident that the parol evidence rule barred the appellants from submitting their version of the transaction. ▆ Moreover, on their own theory of it, as set forth in the first defense, it is evident that the claimed representations were but promissory representations as to future conduct and not false representations as to then existing facts. Promissory representations are neither actionable nor matters of defense. (*Yuba Mfg. Co.* v. *Stone*, 39 Cal. App. 440 [179 Pac. 418]; *Hartke* v. *Abbott*, 106 Cal. App. 388 [289 Pac. 206]; *First Nat. Bank* v. *Sagerson*, 283 Pa. 406 [129 Atl. 333]; *Investors Finance Co.* v. *Bodnar*, 87 Colo. 498 [289 Pac. 599]; *Bushnell* v. *Elkins*, 34 Wyo. 495 [245 Pac. 304, 51 A. L. R. 13].)

▆ The second defense being based on the written contract is to be measured by its terms, aided by such evidence only as is necessary to solve its ambiguities. ▆ In its essence the contract purports to be a security for the note, in that appellants agree to hold 50% of the "working interest" in an oil and gas lease as security for the note and to account to the holder of the note for 50% of the net proceeds from any sales they may make of hydrocarbon products from the leasehold. By the terms of the contract the security represented by it is denominated a mortgage. It is apparent that this phase or portion of the contract gives rise to no defense against a suit on the note. If the pleader intended to raise the point that the contract was a mortgage of realty and that the action could not be maintained on the note except by way of a foreclosure action, he utterly failed to make any such issue. It was for the defendants and not the plaintiff to carry the burden. (*State Savings Bank* v. *Albertson, et al.*, 39 Mont. 414 [102 Pac. 692]; cf. *Crescent Lbr. Co.* v. *Larson*, 166 Cal. 168 [135 Pac. 502].) The other phase or portion of the contract contains recitals and agreements indicating that the note sued upon represented a one-half interest in the "working interest"; that the parties, respondent and appellants, would join in an application to the Commissioner of Corporations for a permit so that appellants could transfer to respondent the one-half working interest they held in their names to secure the note; that if such a permit could not be procured the parties would operate the total working interest as limited partners, the share of respondent to be 50% thereof. On the face of the contract, with one exception shortly to be noted, there is nothing which would indicate

that any transmutation of the working interest as a result of a permit or because one could not be procured should vary the fact that the 50% working interest should continue as a security to the note until it was paid. The fact that the contract recited that the note represented 50% of the working interest does not detract from the terms of the contract. That statement could imply either that respondent had sold to appellants a 50% "working interest" or that he had loaned funds in the amount of the note which in turn represented the value of such interest. The one exception above referred to is found in the last paragraph of the contract, reading: "The parties hereto do state and agree that the drilling of a well upon the herein described premises has been, is and will continue to be a joint venture, according to the terms and arrangements agreed upon from time to time by and between the parties hereto under the varying circumstances as they develop. And the rights herein expressed and set forth are to be considered in the conjunctive and/or disjunctive and are cumulative." But the pleadings failed to interpret the paragraph and so created no issue with respect to it. We think it plain, then, that there is nothing in the contract which is inconsistent with the notion that it was a security merely to the note, much less that it was in any manner a defense to a suit on the note.

However, in the second defense appellants not only set up the written contract but averred that the parties thereto, prior to its execution, had entered into an oral agreement by the terms of which respondent had agreed to enter into a mining copartnership or joint adventure with them to drill an oil well on the leasehold, and that he had agreed to supply $13,500 in cash towards the venture and an additional $1,500 out of his share of the profits; that while respondent had supplied cash in an amount of $13,500 towards the venture, it had been supplied strictly for that purpose and so did not represent any consideration for the note; that the written contract embodied and was intended to embody simply the oral agreements theretofore existing, and for that reason there was no valid consideration for the note; that the contract "was a novation of the right of the plaintiff under an implied contract to sue defendants for the return of money [for] . . . securities issued without permit"; that it was an account stated. These embellishments in the defense must be rejected for the simple reason that the con-

clusion of the pleader as to the meaning of the contract or its effect may not be entertained where it is not supported by the language of the contract.

 Entirely apart from these defenses, which created no legal issue, counsel for appellants contends that upon the trial below he introduced evidence entirely adequate to sustain defenses other than those set up in the answer, and that the trial court committed error in not sustaining them. Accordingly, he not only invites us to, but insists that we must, read the entire reporter's transcript, not only to ascertain that fact but, what is more, that we will then necessarily come to the conclusion that no credence can be given to respondent's testimony and that there is no substantial testimony to sustain the case of respondent. In asking us to read the record below from cover to cover, including such matters as might be material along with all that is immaterial, counsel for appellants is altogether too generous with our time. We think his invitation requires us to suggest that it is the duty of counsel to submit their cases to us in their briefs.

 Initially, it needs to be observed that issues are made by the pleadings, not by the evidence introduced. For the trial court's conclusion reached upon the issues we turn, in a jury waived case, as here, to the findings and conclusions. Where the findings go beyond what appears to us to be the issues as made by the pleadings we are justified, in the absence of any claim to the contrary, in assuming that counsel and the trial court united in trying the case on the theory that such matters were within the issues. In that situation the theory as thus disclosed cannot be rejected when the case comes before us for review.

But where, as here, the claim is made that issues not disclosed by the pleadings or the findings were nevertheless tendered upon the trial below, it is evident that various possibilities inhere in the suggestion. One is that the parties and the court united in trying the case on a theory not disclosed by the pleadings. But this, it is apparent, is quite improbable where, as here, the findings do not suggest such a theory. Another possibility is that while one of the parties submitted evidence on a theory not within the issues, it rested alone in his own mind. But it is fundamental that such evidence does not enlarge the issues, except where the trial court permits an amendment of the pleadings to conform to proof. In the instant case there is no showing in

the briefs or by the clerk's transcript that there was a request for permission to amend, much less that it was either granted or denied. ■ In any case, it rests largely in the discretion of the trial court as to whether an amendment of pleadings to conform to proof should be granted. ■ In the absence of a request to amend, the record would not disclose that either the trial court or the opposing party was advised of the theories of defense resting in the mind of appellants' counsel, unless the record perchance should disclose the fact by comment either from the court or counsel for the other party. Even if it did, this would not give rise to reversible error. The proper way to preserve a right of review, in such a situation, is to request permission to expand the issues as made by the existing pleadings. Unless this be done counsel will too often find himself with a theory in his own mind but with no right to a review of the action of the trial court for failing to have guessed what he had in his mind.

■ Where, as here, counsel contends there is no substantial evidence to sustain the findings he should have set forth in his brief the evidence bearing on that question, or at least have referred us to the pages and lines of the transcript where the testimony appears. However, it is evident from what we have said that a reading of the transcript could not change our views as to the disposition that must be made of the case.

As the pleadings set up no legal defense except want of consideration—and it is patent there was consideration—the evidence either way is without materiality where, as here, no legal defense is alleged.

Judgment affirmed.

Moore, P. J., and Wood (W. J.), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 14, 1942.