Filed 8/21/24  Beucke v. Pitonyak CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KARI BEUCKE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL PITONYAK,<br><br>    Defendant and Appellant. | D081807<br><br><br><br>(Super. Ct. No. 37-2021-00040256-CU-OR-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Reversed and remanded.

Webb Law Group, Lenden F. Webb and Katherine E. Cervantes for Defendant and Appellant.

Greenman, Lacy, Klein, Hinds, Weiser, Michael L. Klein and Amber S. Crothall; Williams Iagmin and Jon R. Williams for Plaintiff and Respondent.

Michael Pitonyak appeals from a judgment after a bench trial in a partition action initiated by Kari Beucke.  He contends the trial court erred in concluding he owned no interest in the property at issue.  We agree.  Hence we reverse the judgment.

# Background

Pitonyak and Beucke are former romantic partners who lived together for several years and have children together.  When Pitonyak moved in with Beuke, record title to the property they occupied was vested in Beucke.  But, over time, it came to be vested in Beucke *and Pitonyak*, first as joint tenants and then as tenants in common.

How title to the property was held at the inception of this lawsuit is characterized in one way in the pleadings, and in an altogether different—and contrary—way in the trial court's findings after trial.  And therein lies the crux of this appeal.

A.    Characterization of Title in the Parties' Pleadings

According to the complaint, Beucke acquired the property several years before Pitonyak moved in.  Then several years later, at a time when the two of them were still living there, she refinanced it.  In connection with the refinance transaction, she executed a quitclaim deed that vested title in herself and Pitonyak as joint tenants.  Then, months later, after they had ended their romantic relationship, Beucke "severed the joint tenancy by executing and recording a 'Notice of Severance of Joint Tenancy.' "  The notice of severance said "[t]he effect of registration [sic] of this Notice of Severance is that the joint tenancy between us will be severed and we will then own the property as tenants in common."

Shortly after filing the notice of severance, Beucke initiated this lawsuit with the filing of a verified complaint.  The complaint alleged the occurrences just described.  It also alleged that, as of the date of the complaint, Beucke and Pitonyak *each h[e]ld a one-half ownership interest in the property as tenants in common* (italics added).  In total, the complaint asserted three theories of action—partition, accounting, and declaratory

relief—and, as to each such theory, it prayed that differences in the financial contributions that each party had made "for the benefit of the property" be taken into account.

The answer admitted each of the allegations described above.

B.      Trial Proceedings as They Pertain to Title of the Property

A little less than one month in advance of trial, the parties filed a joint trial readiness report. The statement of the case in the report recited Beucke's factual allegation that Pitonyak had promised to transfer title back to her after the refinance was finalized. As for her legal arguments, the report reiterated Beucke's position that Pitonyak "holds title to the Property as a Tenant in Common" and not as a joint tenant. Both parties indicated they did not dispute that Pitonyak "was added to title as Joint Tenant by way of the quitclaim deed on January 15, 2020." They likewise agreed that "the proper division of the Property under the partition statutes . . . shall be a division by sale."

Consistent with the joint trial readiness report, the parties stipulated that a partition sale was to occur and that proceeds from the sale were to be divided between the parties "in accordance with their interests in the property as determined after trial pursuant to the court's interlocutory judgment in this action." In keeping with the parties' stipulation, the court on the first day of the trial ordered that "a decree of partition is hereby entered."

What exactly happened at trial is unclear, to say the least. We are severely handicapped by the lack of a reporter's transcript for the trial proceedings, which Pitonyak, the appellant, has failed to provide. Normally, that would mean we would assume that whatever *could* have happened at trial to favor Beucke *did* happen. And the trial court's statement of decision certainly supports that assumption.

3

Over the course of a three-day trial, it would appear that at least some of the testimony focused on the validity of the quitclaim deed (or, in the trial court's words, "the joint tenancy deed"), with the parties disputing the circumstances under which the deed had been executed. The trial court found Beucke "credible" and Pitonyak "lacking any credibility whatsoever." In its statement of decision, the court cited *Machado v. Machado* (1962) 58 Ca1.2d 501 for the principle that "a joint tenancy deed is not conclusive as to the character of real property" but instead "creates a rebuttable presumption that [property] is held in joint tenancy." (Accord, *id.,* at p. 506.) And then it found "that overwhelming evidence [had been] presented at trial to overcome the presumption."

Invoking this evidence, the trial court apparently disregarded the allegation in Beucke's complaint that she and Pitonyak "each hold a one-half ownership interest in the Property as tenants in common," as well as similar statements in the joint trial readiness report. To the contrary, the court found that no cotenancy of *any* sort (i.e., neither a joint tenancy nor a tenancy in common) had arisen between the parties. "Most importantly," the trial court concluded, "there exists credible testimony and evidence of a common understanding between [Beucke and Pitonyak] that the Property belonged to [Beucke], and to [Beucke] alone," notwithstanding the vesting set forth in the quitclaim deed and the status of title asserted in the notice of severance.[1]

On this basis, the trial court found "there [had been] no agreement by the parties to hold ownership as joint tenants" and "[t]o find otherwise would lead to an inequitable result." It ruled *"there is no common interest in the Property . . . [Beucke] owns the Property as the sole owner."* (Italics added.)

---

[1] The court supported these findings with substantial additional findings regarding the parties' course of dealing with one another.

4

Apparently ignoring the partition order it had entered at the beginning of the trial, the court concluded that "the request for partition and accounting is [therefore] moot." Then it entered a judgment decreeing that "Kari Beucke, a single woman, is the sole owner of [the property]."

Pitonyak timely appealed.

## II.
### Discussion

Pitonyak contends the trial court erred in ruling that he owned no interest in the property. In support of this contention he makes several arguments, two of which are the focus of our discussion below.

### A.  Contradicting Allegations in Complaint

Pitonyak argues the judgment impermissibly contradicts the allegation in the complaint that title vested, not just in Beucke, but rather in Beucke *and Pitonyak*. This argument implicates the principal that a " '[w]ell pleaded allegation[ ] in the complaint [is] binding on the plaintiff at trial.' " (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 187.) As one reviewing court has explained:

> "The admission of fact in a pleading is a 'judicial admission.' Witkin describes the effect of such an admission: 'An admission in the pleadings . . . is fundamentally different from evidence: It is a waiver of proof of a fact by conceding its truth, and it has the effect of removing the matter from the issues. (4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 413, pp. 510–511.)"

(*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271 (*Valerio*); see also *Bucur*, at p. 187 [a "judicial admission in a pleading is not merely evidence of a fact [but, rather] a conclusive concession of the truth of the matter;" " 'the trial court may not ignore a judicial admission in a pleading, but must conclusively deem it true as against the pleader' "].)

5

Here, the complaint sought a partition sale, an accounting, and a declaration of the parties' respective interests in the property, so that proceeds of the contemplated sale could be allocated accordingly. In support of such relief, it alleged—and the answer admitted—that the parties "each h[e]ld a one-half ownership interest in the property as tenants in common." The trial court made findings contrary to this admission.

But, for the reasons set forth above, it was error for it to give effect to those findings. (See *Valerio, supra*, 103 Cal.App.4th at p. 1271 [" 'If the court does find adversely to the admission, such finding should be disregarded in determining the question whether the proper conclusion of law was drawn from the facts found and admitted by the pleadings.' "].) This is because " 'the facts alleged must be assumed to exist,' " such that " '[a]ny finding adverse to the admitted facts drops from the record, and any legal conclusion which is not upheld by the admitted facts is erroneous.' " (*Ibid.*)

As noted *ante*, the complaint alleged Beucke and Pitonyak "each h[e]ld a one-half ownership interest in the property as tenants in common," and the answer admitted as much. Hence the trial court was bound by this allegation, it was not at liberty to ignore or contradict the allegation, and its deviation from the principles set forth above was error.

Beucke asserts the allegation that she and Pitonyak each held a one-half ownership interest in the property as tenants in common "must be read in context" as nothing more than an acknowledgment of "the then-current state of the recorded title to the property," as distinguished from the state of title pursuant to "the parties' contrary agreement." "[A]ll that occurred here," she says," is that she followed "the modern practice allow[ing] [a] party to plead in the alternative and make inconsistent allegations." But fairly read,

the complaint offers no alternative or inconsistent allegations, or otherwise places a reader on notice that Beucke was disputing record title.

Beucke also asserts the discrepancy between the title alleged in the complaint and the title found by the trial court should be disregarded because Pitonyak "embraced" and "actively litigated" issues pertaining to title at trial. In other words: No harm, no foul because—irrespective of what it might say in the complaint—Pitonyak got his day in court. But the authorities she cites to support this assertion undercut it. (See, e.g., Code of Civil Procedure § 580, subd. (a) ["the court may grant the plaintiff any relief *consistent with the case made by the complaint* and embraced within the issue" (italics added)]; *Wright v. Rogers* (1959) 172 Cal.App.2d 349, 367 [the "jurisdiction of the court to grant any particular relief *depends . . . on the scope of the complaint* and the issues made or which might have been made under it" (italics added)].)

Beucke's argument—that, if Pitonyak agreed at trial to litigate not only what type of title he held but whether he held any title at all, then he should not be heard to complain *after* trial that the latter issue exceeded the scope of the complaint—is akin to an estoppel argument. And as a matter of principle it is not without merit. (See *Breakers Holding Co. v. Josebra Co.* (1954) 122 Cal.App.2d 741, 748 (*Breakers*) ["if the parties proceed throughout the trial as if a certain issue is presented for adjudication, [then they] are estopped from claiming that no such issue was raised by the pleadings"].)

In the typical case, the pleadings define the issues to be resolved at trial. Issues framed by the pleadings are often narrowed by pretrial motions, formal stipulations, or agreement of the parties in the joint trial readiness report. Here, however, we deal with a highly unusual circumstance in which Beucke asserts that the issues framed by the pleadings were *expanded* by

7

agreement of the parties at trial. To prevail in this argument, she necessarily bears the burden of establishing such an agreement. But her argument ultimately fails because its central premise—that Pitonyak *agreed* to litigate the issue of whether he held any title at all—is not supported by the record.

Indeed, the record is consistent with Pitonyak's position that the issue of *whether* he held title (as distinguished from what *type* of title he held) was at odds with the issues presented to the trial court in the run-up to trial. Thus, for example: the parties' joint trial readiness report says "[Beucke] alleges that a true joint tenancy never existed, and that [Pitonyak] holds title to the property as a tenant in common;" and the relief that the parties jointly requested on the eve of trial and that the trial court decreed on the first day of trial—i.e., partition—is a type of relief that "is the procedure for segregating and terminating common interests in the same parcel of property." (4 Miller & Starr, Cal. Real Estate (4th ed. 2024) Holding Title, § 11:14; see also *14859 Moorpark Homeowner's Association v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1404–1405.)

We see nothing in the record to corroborate Beucke's contention that Pitonyak acquiesced (nor do we see anything to suggest *why* he would have acquiesced) to litigating at trial a matter (i.e., whether Pitonyak held title) that Beucke already had repeatedly conceded—in her complaint, in the joint trial readiness report, and in the partition stipulation that the parties had signed on the eve of trial. The consequence of the record's silence on this point is illustrated in the opinion of the court in *Lankster v. Alpha Beta Co.* (1993) 15 Cal.App.4th 678 (*Lankster*).

In that case, the appellant "met her burden on appeal by presenting a record sufficient to establish" the position for which she was advocating.

8

(*Lankster, supra,* 15 Cal.App.4th, at p. 683.) "With that done, . . . [t]he burden thereupon shifted to [the respondent] to rebut" that position. (*Ibid.*) But, on the record presented by the appellant, the respondent could not do so. (*Id.,* at p. 684.) Realizing "the record before [it] was wholly inadequate to rebut" the appellant's position, the court posed the question, "*whose burden was it* to present a record sufficient to show whether" the appellant's point was well taken? (*id.* at page 684, footnote 5, italics added) and it answered the question as follows:

> Faced with the inadequate record designated by [the appellant], all [the respondent] had to do was file a counterdesignation. [Citation.] But that it did not do, notwithstanding that it was on notice of the issue to be raised on appeal . . . Having failed to provide a record sufficient to support its position, [the respondent] will not now be heard to complain.

(*Lankster,* at p. 684; see also *Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133, 1149 ["Counsel is obligated to refer us to the portions of the record supporting his or her contentions on appeal. . . . Where, as here, respondents have failed to cite that evidence, they cannot complain when we find their arguments unpersuasive."].)

Although we acknowledge the likelihood that evidence admissible for the purpose of discerning what kind of title Pitonyak held in the property may also have been probative as to whether Pitonyak held any title in the property at all, that circumstance is of no consequence to our analysis. For, however true it may be that a party who litigates an issue at trial will be estopped from complaining that the issue exceeded the scope of the pleadings (see *Breakers, supra,* 122 Cal.App.2d at p. 748), so too "if evidence admissible for one purpose tends to establish another issue, if such issue is not before the court, it cannot be used to establish that issue." (*Ibid.*)

9

Finally, on this point, we note that—on the record presented—the trial court's posttrial decree that "Beucke . . . is the sole owner of [the property]" cannot be squared with its stipulated *pre*trial decree partitioning the property in anticipation of dividing the proceeds of sale *between* the parties, particularly where the court's statement of decision failed to acknowledge and made no attempt to vacate the earlier order.

B.     Exceeding Relief Requested in Complaint

Pitonyak also argues the judgment impermissibly exceeds the relief requested in the complaint.  In addressing this argument, we begin by noting that the effect of the judgment—decreeing that "Kari Beucke, a single woman, is the sole owner of [the property]"—was to quiet title in Beucke.  The thrust of that decree was to give effect to the trial court's finding that Beucke was the property's sole owner.  But, inasmuch as that finding contradicts the complaint (see *ante*), it was error to give it effect.

In an effort to salvage the judgment's decree quieting title, Beucke asserts that it falls within the scope of relief requested in the complaint's prayer for declaratory relief.  But that prayer does not reveal any expectation or desire that title be quieted exclusively in Beucke.  Indeed, to the contrary, it unambiguously assumes cotenancy:

> "Wherefore, Plaintiff prays for a . . . Declaration . . . that [Beucke] is entitled to reimbursement from [Pitonyak] for a proportionate share of the costs expended by [Beucke] for the benefit of the property, including but not limited to, mortgage payments, tax, insurance, maintenance, and other expenses; [and] that[,] after taking into account all of [such] costs . . . , the amount of the proceeds due to [Pitonyak] after a sale of the property shall be reduced accordingly."

Such relief could certainly include a declaration of apportionment that results in one party or the other receiving the lion's share of partition sale

10

proceeds.  But it does not extend to a decree that contradicts a premise as central to the pleadings as the premise that the parties "each hold a one-half ownership interest in the property as tenants in common."

Had the complaint asserted a theory of action to quiet title in Beucke, or to cancel or rescind the quitclaim deed or notice of severance, then our analysis would be different.  But it did not assert any such theory of action. Instead, it alleged, and the answer admitted, that the parties were tenants in common.[2]

### III.
### Disposition

The judgment is reversed.  The case is remanded for further proceedings consistent with this opinion.  Pitonyak is entitled to costs on appeal.

KELETY, J.

WE CONCUR:

IRION, Acting P. J.

DATO, J.

---

[2] Pitonyak makes two additional arguments.  These are:  that the trial court erred in failing to find that Beucke had proven by clear and convincing evidence (as opposed to a lesser standard of proof) that the presumption of title had been rebutted; and that the principal evidence on which the trial court relied in making that finding was testimony it should have excluded on the basis of the statute of frauds.  But each of these arguments is rendered moot by our conclusion that it was error for the trial court to give effect to that finding.